UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13cv530-FDW

| DANIEL THOMAS FARRELL, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| KEITH WHITENER, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

**THIS MATTER** is before the Court upon Petitioner Daniel Thomas Farrell's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Also before the Court is Respondents' Motion for Summary Judgment. (Doc. No. 6.)

**I. BACKGROUND**

Petitioner is a prisoner of the State of North Carolina currently serving a 36-year sentence for multiple counts of armed robbery. On March 13, 2013, he received a prison disciplinary conviction for the A99 and B99 offenses of attempting to bring contraband, i.e., tobacco, marijuana, cellphones, and money, into prison. (DOC Record of Hearing, Resp't's Ex. #2 8, Doc. No. 7-2.)[1] For the A99 offense, Petitioner received 30 days segregation, 20 days "good-time" credit loss, 30 hours of extra duty, 90 days suspended canteen visitation, and three months limited account withdrawals. (DOC Offense and Disciplinary Report, Resp't's Ex. #2, supra, at 6.) For the B99 offense, Petitioner received the same sentences with the exception of two months limited account withdrawals. (Offense and Disciplinary Report, Resp't's Ex. #2, supra.)

---

[1] Page numbers in citations to documents filed in this case are those generated by the district court's electronic filing system.

1

Petitioner timely appealed to the Director of Prisons, and on March 26, 2013, the Chief Disciplinary Hearing Officer upheld the March 13, 2013 disciplinary action. (Letter, Pet'r's Ex. F 24, Doc. No. 1.) According to petitioner, he has filed no other petitions, applications, or motions concerning this judgment of conviction. (Pet. 3, Doc. No. 1.)

Petitioner filed the instant habeas petition challenging the revocation of his "good-time credits" on September 20, 2013. (Doc. No. 1.) Upon completion of an initial review of the petition and attached documents as required by Rule 4 of the Rules Governing Section 2254 Cases, the Court ordered Respondent to answer the petition. (Doc. No. 3.) On March 17, 2014, Respondent filed a Response, Motion for Summary Judgment, and Memorandum in Support. (Doc. Nos. 4, 6, 7.)

In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court provided Petitioner notice of Respondent's Motion for Summary Judgment and an opportunity to respond. (Doc. No. 8.) Petitioner did so on April 14, 2014. (Doc. No. 9.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

## III. DISCUSSION

When a state prisoner challenges the length or duration of his confinement by alleging that certain good time credits were cancelled or denied pursuant to an unconstitutional process, and then seeks the restoration of those credits, he must first exhaust his state remedies. See Todd v. Baskerville, 712 F.2d 70, 72 (4th Cir. 1983). In order to exhaust his State remedies, "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claims." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citation omitted).

Respondent contends that Petitioner has not exhausted the remedies available to him in the State courts because he has not sought review of his constitutional claims by way of a Motion for Appropriate Relief filed in the appropriate state superior court. (Mem. in Supp. of Summ. J. 7-8, Doc. No. 7 (citing Jones v. Keller, 698 S.E.2d 49 (N.C. 2010)).) Respondent expressly declines to waive the exhaustion requirement. However, recognizing this Court's power to deny Petitioner's claims on the merits notwithstanding non-exhaustion, see 28 U.S.C. § 2254(b)(2), Respondent urges the Court to exercise that power here to conserve scarce state and federal judicial resources.

Petitioner raises two constitutional claims invoking his right to due process: 1) that he was not given adequate notice of the charges against him; and 2) that there was insufficient evidence presented at the disciplinary hearing to support his convictions on the charges. In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court set forth the due process rights that must be afforded to an inmate in the context of a prison disciplinary hearing that results in the loss of good time credits. The inmate must receive: (1) advance written notice of the disciplinary

charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563–66; see also Superintendent Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 454 (1985) (discussing Wolff). When an inmate brings a habeas petition to challenge the sufficiency of the evidence underlying a revocation of his good time credits, the requirements of due process are met when "the findings of the prison disciplinary board are supported by some evidence in the record." Hill, 472 U.S. at 454. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Id. at 456. "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990).

The DOC Offense and Disciplinary Report and Investigating Officer's Report show that Petitioner was informed of the following charges:

> ON 2/19/13 AT 0900, LT. SMITH STATED HE RECEIVED INFORMATION FROM A RELIABLE SOURCE THAT WAS PROVEN RELIABLE IN THE PAST THAT INMATE FARRELL WAS ATTEMPTING TO BRING IN TOBACCO, MARIJUANA, CELLPHONES, AND MONEY.
>
> INMATE FARRELL IS BEING CHARGED WITH AN A99 IN REFERENCE TO A A16, A99 IN REFERENCE TO AN A12, AND A B99 IN REFERENCE TO A B 16.
>
> THIS CHARGE IS BEING REFERRED TO THE DHO.

(Resp't's Ex. #2 10-11, Doc. No. 7-2.) February 19, 2013 is listed as the date of offense. (Resp't's Ex. #2, supra, at 10.)

According to the DOC Record of Hearing, the Disciplinary Hearing Officer ("DHO") found Petitioner guilty of the A99 and B99 offenses "based upon the reporting party's statement and the information gathered by the investigating officer." (Resp't's Ex. #2, supra, at 8.) The reporting party's statement was:

> On 02/19/13 at approximately 0900 hrs. I received information from a confidential source that has been proven to be reliable in the past. The information given by the source stated that Inmate Daniel Farrel (sic) attempted to bring contraband into the facility through an outside source. According to the confidential source, the contraband that Inmate Farrell was attempting to bring into the facility included tobacco, marijuana, cell phones, and money.

(Statement by Kenneth Smith, Jr., Resp't's Ex. #2, supra, at 13.) The "information gathered by the investigating officer" is not listed or otherwise identified in the hearing record. (Record of Hearing, Resp't's Ex. #2, supra.) The investigating officer's pre-hearing report states in relevant part that:

> I, . . . began my investigation by verifying the statement received to be valid.
>
> Lt. Kenneth Smith stated that on 2/19/13 at—approximately 0900 hours he received information from a confidential source that has proven to be reliable in the past. The information given by the source stated that inmate Daniel Ferrell . . . attempted to bring contraband into the facility through an outside source. According to the confidential source, the contraband that inmate Ferrell was attempting to bring into the facility included tobacco, marijuana, cell phones, and money.

(Resp't's Ex. #2, supra, at 8.) Other than obtaining Lt. Smith's statement, (Resp't's Ex. #2, supra, at 13), the report does not list any other information gathered by the investigating officer or any other step taken by the officer to investigate the allegation made by the confidential informant. (Investigating Officer's Report, Resp't's Ex. #2, supra, at 8). As such, the only evidence that Petitioner committed a disciplinary violation was the hearsay statement of an unidentified informant.

5

In <u>Baker v. Lyles</u>, the Fourth Circuit Court of Appeals considered the use of hearsay statements of anonymous informants in prison disciplinary hearings. 904 F.2d 925 (4th Cir. 1990). Baker, a Maryland inmate, was charged with having escape contraband in his possession and of association with other inmates in an escape attempt. See id. at 926. The charges were based upon information received by a prison officer from a confidential informant. See id. The statement was contained in a letter from the prison officer to the prison's chief of security:

> Acting on information received, I conducted an investigation in an effort to locate some of the escape tools that was [sic], and still is [sic], suspected of being in this institution.
>
> During my inquiries, I received information from a very reliable source that Inmate Russell Baker # 161861 had knowledge of the whereabuts [sic] on [sic] some of the tools which had been used. My sources assured me that they could obtain the tools if given the opportunity to be able to talk to the Chief of Security. I did tell the source [sic] that I could make certain that they were given the chance to speak with the Chief of Security.
>
> At approximately 2:30 p.m., August 31, 1985, I was given one (1) hacksaw carbine blade and one (1) jewelers string by one of the persons previously mentioned. I asked him where did he get these items from and he stated that he got them from Inmate Russell Baker (see attached statement).

Id. at 927 and n.1. Baker subsequently was found guilty of the charges. Id. at 927. Part of his sentence included the loss of good time credits. See id.

Baker claimed in federal court that his convictions were based solely upon the hearsay statement of the unidentified informant, whose reliability was not established at the hearing, and that this was a violation of due process. See id. The Fourth Circuit held that the evidence before the ultimate decision-maker, the warden, met the "some evidence" standard:

> <u>This is not a case where the only evidence before the prison tribunal was the hearsay statement of an unidentified informant</u>. . . . The record does not reflect whether [Baker] or his representative at the initial hearing questioned the reliability of the informant or sought to challenge [the reporting person's] written statement that the

6

> information was 'from a very reliable source.' However, the warden, who made the final decision, had the additional evidence that Baker had previously escaped from a prison, that considerable work had been done to accomplish an escape through the exhaust fan in the institution's chapel, and that certain escape tools had been recovered. Therefore, the requirements of Wolff and Hill were met.

Id. at 933 (emphasis added). Left unanswered was whether the hearsay statement of the unidentified informant by itself met the due process requirement of "some evidence."

A number of federal circuit courts require evidence in addition to information from a confidential informant or evidence tending to support the informant's reliability in order for the "some evidence" standard to be met. See e.g., Sira v. Morton, 380 F.3d 57, 77 (2d Cir. 2004) (holding that due process requires an independent credibility assessment by the hearing officer when confidential information is used to establish the "some evidence" necessary for conviction in prison disciplinary proceedings); Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir. 2002) ("[B]ecause the overarching due process concern is whether "some evidence" supports the disciplinary decision, a reviewing court must examine . . . the reliability of the confidential informant . . . in cases where the confidential information is needed to satisfy the some evidence standard."); Broussard v. Johnson, 253 F.3d 874, 876-77 (5th Cir. 2001) ("It is clear that a bald assertion by an unidentified person, without more, cannot constitute 'some evidence' of guilt. The courts generally require that the disciplinary board independently assess the reliability of the informant's tip based on some underlying factual information before it can consider the evidence.") (citations omitted); see also Boone v. Holt, 523 F. App'x 173, 175 (3d Cir. 2013) (unpublished) ("When a disciplinary decision relies upon statements from confidential informants, minimum due process requires that the record contain (1) some underlying factual information from which the tribunal can reasonably conclude that the informant was credible or his information reliable; and (2) the informant's statement in factual language, establishing by its

7

specificity that the informant spoke with personal knowledge of the matters.") (citing Helms v. Hewitt, 655 F.2d 487, 502 (3d Cir. 1981), rev'd on other grounds, Hewitt v. Helms, 459 U.S. 460 (1983)).

Although the Fourth Circuit has not directly addressed this issue, another look at Baker is instructive. In that case, the informant's hearsay statement was the only evidence directly tying Baker to the escape plan or escape attempt. Nevertheless, escape tools and an exhaust fan that had been tampered with were evidence that an escape plan by one or more inmates was in the works. The informant gave the tools to the reporting officer, demonstrating that the informant had first-hand knowledge of the escape plan. Baker's previous prison escape and the informant's first-hand knowledge of the active escape plan can be viewed as indicia of the informant's reliability regarding Baker's involvement.

There is nothing similar here. There was no physical or other corroborating evidence presented at the hearing, or otherwise identified in the DHO's report, that a disciplinary infraction occurred. Additionally, nothing in the reporting person's statement indicates that the informant's statement was based upon personal knowledge.[2] Nor does it state any facts that support the reliability of the informant's statement, other than that the source had "been proven to be reliable in the past." (Statement by Kenneth Smith, Jr., Resp't's Ex. #2 13, Doc. No. 7-2.) The DHO, who is required by Inmate Disciplinary Procedures to independently determine the reliability of the informant and "state his determination in the record," (Chapter B .0200 23, Pet.

---

[2] Respondent asserts that the reporting person's statement relayed first-hand information from the confidential informant. This assertion appears to be based upon Inmate Disciplinary Procedures, which require that a confidential informant's information be from personal or first-hand knowledge in order to be used in a disciplinary hearing. (Mem. of Support 6, Doc. No. 7 (citing Inmate Disciplinary Procedures, Chapter B .0200 23, Pet. 20, Doc. No. 1)). However, as noted, nothing in the reporting person's statement indicates that the informant's statement was based upon personal or first-hand knowledge.

8

20, Doc. No. 1), wrote in the disciplinary hearing record that she "did verify the confidential sourse [sic] which has been used in the pass [sic] to [sic] highly reliable," (Resp't's Ex. #2 8, Doc. No. 7-2). This assertion by the DHO could mean a number of things. Viewed in the light most favorable to the non-moving party, however, the DHO verified that the confidential informant had proved to be highly reliable in the past. Therefore, viewed in the light most favorable to Petitioner, the only evidence against him was a hearsay allegation by a confidential informant who had proved to be highly reliable in the past.

Summary judgment is only appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Anderson, 477 U.S. at 248–49. The Court cannot find that the current record, taken as a whole, could not lead a rational trier of fact to conclude that the evidence against Petitioner did not meet the due process requirement of "some evidence." Consequently, summary judgment for Respondent is not appropriate.

## IV  CONCLUSION

As noted, Respondent has raised an exhaustion defense, and although the Court may deny unexhausted claims on the merits, it may not grant unexhausted or procedurally defaulted claims. See § 2254(b)(2). Furthermore, the exhaustion requirement "is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). In this case, the North Carolina courts should have the first opportunity to address whether the due process requirement of "some evidence" was met. Therefore, the Court will dismiss the habeas petition without prejudice, so that Petitioner may exhaust his federal constitutional claims in the state courts.

9

## V. ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) is **DISMISSED** without prejudice as unexhausted;

2) Respondent's Motion for Summary Judgment (Doc. No. 6) is **DENIED;** and

3) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: March 30, 2015

Frank D. Whitney
Chief United States District Judge